[Cite as *Mayer v. Mayer*, 2022-Ohio-533.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jessica L. Mayer, | : | |
| Plaintiff-Appellee, | : | No. 21AP-3 |
| | | (C.P.C. No. 18DR-1343) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Matt A. Mayer, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 24, 2022

**On brief:** *Friedman & Mirman Co., L.P.A., Denise Mirman* and *Robert A. Letson.*, for appellee. **Argued:** *Denise M. Mirman*

**On brief:** *Grossman Law Offices, John H. Cousins IV,* and *Anthony R. Auten*, for appellant. **Argued:** *John H. Cousins*

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations and Juvenile Branch

JAMISON, J.

{¶ 1} Defendant-appellant, Matt A. Mayer, appeals from a December 2, 2020, judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, terminating his marriage to plaintiff-appellee, Jessica L. Mayer, dividing marital property, and ordering child and spousal support. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The parties met when they were working as attorneys at different branches of the same law firm, one in Denver and the other in Salt Lake City. The parties were married on May 31, 2000, in Denver, Denver County, Colorado. Three children were born as issue of the marriage: M.M., born December 11, 2001 (now emancipated), G.M., born June 17, 2004, and S.M., born August 11, 2010.

{¶ 3} The couple moved to Washington, D.C. when appellant accepted a legal position with Homeland Security. The evidence shows that appellant's work schedule became very heavy after the move to D.C. Appellee admitted that she had a romantic relationship with a co-worker during this time period. When appellant discovered the relationship, the parties agreed to quit their current jobs and move to Ohio in an effort to save their marriage.

{¶ 4} In 2006, the parties moved from Washington D.C. to central Ohio. After the move to Ohio, appellant started his own consulting firm, Provisum Strategies LLC, and he became a leader of various conservative think tanks including the Buckeye Institute and Opportunity Ohio. He also earned income from fellowships at other conservative think tanks. From 2010 to 2017, appellant earned between $152,000 and $236,000 per year.

{¶ 5} Appellee took a job with Cardinal Health and she quickly became one of their top lawyers. The evidence shows that marital difficulties arose due to appellee's increasing workload following her promotion to Co-Deputy Legal Counsel in January 2016. In an email to appellee, dated January 29, 2016, appellant proposed several options for saving the marriage, many of which involved appellee leaving her current position with Cardinal Health.

{¶ 6} The parties eventually separated in the summer of 2017, but they reconciled after a few months. However, in October 2017 the parties separated again and did not reconcile. Appellee filed her complaint for divorce on April 5, 2018. Appellant filed his answer and counterclaim for divorce on April 30, 2018. In March 2019, appellee became the Chief Legal and Compliance Officer for Cardinal Health, resulting in a significant increase in her compensation.

{¶ 7} During the course of this litigation, appellant remained in the marital home with the children. Appellee eventually purchased a home in the same neighborhood, and G.M. moved in with appellee.

{¶ 8} Prior to trial, the parties stipulated a marital duration of May 31, 2000, to December 31, 2018, and "both parties are entitled to a divorce from the other on the grounds of incompatibility." (Aug. 18, 2020 Trial Stipulations & Agreed Entry at 2.) On August 31, 2020, the case proceeded to a bench trial. The crux of the dispute was the calculation and treatment of appellee's income for purposes of child support and spousal

support. The evidence at trial showed appellee's annual income included a base salary, a cash bonus, and a variety of stock bonuses. Her base pay in 2020 was $575,000 per year, paid on a bi-weekly basis. Appellee also received an annual cash bonus as part of Cardinal Health's Management Incentive Plan ("MIP"), paid in August. In 2020, appellee's cash bonus was $559,061. As of the trial date, appellant was earning $125,000 performing data analysis and authoring public policy statements for Opportunity Ohio, a Columbus-based think tank.

{¶ 9} The treatment of appellee's qualified Cardinal Health shares was the primary bone of contention at trial. Appellee's stock-based compensation was paid to her pursuant to Cardinal Health's Long-Term Incentive Plan ("LTIP"). The LTIP bonus includes Performance Share Units ("PSUs"), which made up 60 percent of the bonus, and Restricted Share Units ("RSUs"), which made up 40 percent of her bonus. Cardinal Health's 2019 Proxy Statement explains that the RSUs and PSUs are valued by multiplying the closing price of Cardinal Health's common stock on the grant date by the number of RSUs and PSUs awarded. Appellee receives her yearly LTIP stock bonus in August.[1]

{¶ 10} The evidence at trial further established that RSUs shares vest at a rate of one-third each year following the award and that PSUs are subject to "cliff-vesting," meaning that no portion of the shares vest until three years have passed. (Sept. 1, 2020 Tr. Vol. 2 at 414.) At the close of the three-year period, Cardinal Health's compensation committee makes a determination based on company performance whether all or any of PSUs shares will be funded.

{¶ 11} In the parties' August 18, 2020 stipulation, the parties agreed that "[t]he issue of spousal support, child support and child-related expenses shall be submitted to the Court at the August 31, 2020 trial." (Trial Stipulations & Agreed Entry at 3.) All matters regarding the parties' minor children, excluding child support and child related expenses, were

---

[1] The trial court noted that appellee also received certain non-qualified stock options as a result of her employment with Cardinal Health. The trial court treated these options as marital property and divided the shares as follows: "One-half of each grant shall be held in constructive trust by Jessica for Matt's potential benefit. These options are set forth on Plaintiffs trial Exhibit 1-A. The options are those granted up to and including August 31, 2017. No stock options were granted to Jessica after that date." (Dec. 2, 2020 Jgmt. Entry/Decree of Divorce at 22.) The distribution of the non-qualified stock options is not an issue in this appeal.

resolved pursuant to the Joint Shared Parenting Plan and Shared Parenting Decree, filed with the trial court.

{¶ 12} On December 2, 2020, following a four-day bench trial, the trial court issued a Judgment Entry/Decree of Divorce, wherein the trial court granted a divorce to the parties on the complaint and counterclaim. The trial court ordered appellee to pay child support to appellant in the amount of $3,136.05 per month and spousal support in the amount of $4,166.66 per month. The trial court excluded appellee's yearly cash bonus and LTIP bonus from appellee's gross income, for purposes of calculating child support, and excluded appellee's LTIP bonus from appellee's gross income for purposes of calculating spousal support. The trial court also awarded appellee a 40 percent share of the proceeds of any book that appellant "is writing or plans to write" about the divorce. (Jgmt. Entry/Decree of Divorce at 31.)

{¶ 13} Appellant timely appealed to this court from the December 2, 2020 judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

> [1.] **The trial court erred and abused its discretion by refusing to include appellee's annual bonus and stock-based compensation in its calculation of appellee's gross income for purposes of child support.**
>
> [2.] **The trial court erred and abused its discretion in calculating appellee's income for purposes of spousal support and in determining the amount and duration of spousal support.**
>
> [3.] **The trial court erred and abused its discretion by granting Jessica a lifetime award of 40% of any income appellant might receive from any book that appellant "is writing or plans to write" about the divorce.**

## III. STANDARD OF REVIEW

{¶ 15} "A domestic relations court has broad discretion in a divorce proceeding to determine child support, spousal support, and divisions of marital property." *Habtemariam v. Worku*, 10th Dist. No. 19AP-47, 2020-Ohio-3044, ¶ 18, citing *Booth v.*

*Booth*, 44 Ohio St.3d 142 (1989), and *Turner v. Turner*, 90 Ohio App.3d 161, 164 (10th Dist.1993.)   Accordingly, the abuse of discretion standard is appropriate for appellate review of matters concerning child support.  *Poling v. Poling*, 10th Dist. No. 13AP-189, 2013-Ohio-5141, ¶ 5, citing *Booth*.   "The same standard applies when we review a trial court's award of spousal support."  *Poling* at ¶ 5, citing *Falk v. Falk*, 10th Dist. No. 08AP-843, 2009-Ohio-4973, ¶ 1.

{¶ 16} The term " 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Falk* at ¶ 11, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).   "When applying this standard of review, an appellate court may not merely substitute its judgment for that of the trial court."  *Havens v. Havens*, 10th Dist. No. 11AP-708, 2012-Ohio-2867, ¶ 6, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128 (1989).   A reviewing court should not independently reweigh the evidence.  *Lopez-Ruiz v. Botta*, 10th Dist. No. 11AP-577, 2012-Ohio-718, ¶ 13, citing *Miller v. Miller*, 37 Ohio St.3d 71 (1988).

## IV.  LEGAL ANALYSIS

### A. Appellant's Second Assignment of Error

{¶ 17}  To facilitate the discussion, we will begin with appellant's second assignment of error.  In appellant's second assignment of error, appellant contends that the trial court abused its discretion by failing to include all of appellee's gross income when calculating spousal support.  More particularly, appellant argues that the trial court should have included appellee's LTIP bonus compensation in her gross income for purposes of spousal support.  We agree.

{¶ 18} R.C. 3105.18, which governs the award of spousal support in divorce proceedings, provides in relevant part as follows:

> (B) In divorce * * *, upon the request of either party and *after the court determines the division or disbursement of property under section 3105.171 of the Revised Code*, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.
>
> An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money,

payable either in gross or by installments, from *future income* or otherwise, as the court considers equitable.

(Emphasis added.)

{¶ 19} R.C. 3105.18(C) requires the trial court to consider certain factors "[i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support." R.C. 3105.18(C)(1).  Those factors include:

(a) *The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code*;

(b) The relative earning abilities of the parties;

* * *

(e) *The duration of the marriage*;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) *The standard of living of the parties established during the marriage*;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

(2) *In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.*

(Emphasis added.)

{¶ 20} " 'A trial court need not itemize and comment upon each factor; however, there must [be] a clear indication in the court's decision that the factors were considered.' " *Misra v. Mishra,* 10th Dist. No. 17AP-306, 2018-Ohio-5139, ¶ 51, quoting *Hightower v. Hightower*, 10th Dist. No. 02AP-37, 2002-Ohio-5488, ¶ 24.

{¶ 21} Prior to trial, the parties' filed a written stipulation wherein the parties agreed that both Brian Russell, appellant's expert witness, and Rebekah Smith, appellee's expert witness, were qualified as experts in the field of forensic accounting. Each of these witnesses offered opinion testimony regarding the proper treatment and value of appellee's LTIP bonus for purposes of child and spousal support.

{¶ 22} On direct examination, appellee's expert witness Rebekah Smith succinctly set forth appellee's position with respect to the treatment of appellee's LTIP bonus:

> Q. * * * What assumptions did you make when you were doing this analysis of Jessica's long-term incentives?
>
> A. Yes. Fundamentally, there is a legal assumption undermining my analysis, which is my understanding it is [wife's] position that the long-term incentives should be treated as property and not as income; and, therefore, the awards that are vesting after the December 31, 2018, or were awarded after December 31 of 2018, would not be considered as marital property.

(Sept. 1, 2020 Tr. Vol. 2 at 416.)

{¶ 23} Concerning the question whether appellee's LTIP bonus should be treated as marital property or as income to appellee, Russell set forth appellant's position on cross-examination as follows:

> Q. And isn't it true that it's not just a W-2 that we look at when we determine whether something is income?
>
> A. That's correct. It's not just a W-2.
>
> Q. And you have argued cases in the past treating -- that RSUs or PSUs should be treated as income or RSUs or PSUs should be treated as property, correct?

A. Yes, in both. It's been handled both ways in many cases over the years.

Q. Okay. But doesn't Matt Mayer in this case want to have his cake and eat it too in the sense that he wants to count a bunch of RSUs and PSUs as property and then he wants to treat the other ones later on as income, correct?

A. * * * [M]y position and my calculations and understanding are that any RSUs or PSUs that are treated as property and being divided should not be counted as income and would have to be reconciled and backed out of any income calculations in future years. I haven't personally made or heard an argument that we want the same shares treated as both property and income.

Q. Okay. I think I have two questions now. But you will agree with me that he wants to characterize them as property up to a certain point of time and then he wants to characterize them as income, correct?

A. I would agree.

Q. And you would also agree with me, however, that we absolutely should not take any grant and treat part of it as property and part of that exact same grant as income, correct?

A. That's correct.

(Tr. Vol. 2 at 854-55.)

{¶ 24} Smith contrasted appellee's position with the position taken by appellant as follows:

Q. Okay. And what is it that you believe the position is [Russell's] been asked to take?

A. So it's my understanding that Mr. Russell has been asked to take the position that any of the awards that either vest after 12/31/18 or were awarded after 12/31/18 should then be treated as income.

Q. And is that different than the position that you are taking?

A. Yes. My position, based on your legal premise, is that the RSUs and PSUs are property, and then we have divided them according to the coverture fraction that are not being included as income.

(Tr. Vol. 2 at 473.)

{¶ 25} The trial court considered the question whether appellee's LTIP's were property or income for purposes of spousal support, and made the following ruling:

> "Annual Total Direct" compensation summary from February 2019 notes a value of $2,471,250, which is comprised of the following components: base salary ($525,000); Bonus Target of 85% of her salary, known as a short term market incentive plan (MIP) of ($446,250); and annual equity awards, known as long term incentives (LTIs) ($1,500,000). See Joint Exhibit 19B. In June 2020, Jessica received a raise based on increased responsibilities, her salary was increased to $575,000 and her bonus target increased to 90% of her income.
>
> Jessica testified that in order for the MIP to be funded, the corporation has to meet and exceed its goals and the individual employee must also excel. Thus, she asserted her cash bonus is not guaranteed and Cardinal has in the past funded the bonus program at less than 100% of target. Cardinal exceeded its performance goals in 2020, the entire bonus pool was funded at 120%, and in August 2020, she received a cash bonus of $559,061. See Joint Exhibit 19D.
>
> The court finds Jessica's income to be $1,134,061 including her annual salary of $575,000 plus her bonus of $559,061. *The LTI's are not being considered as income by the Court.*

(Emphasis added.) (Dec. 2, 2020 Jgmt. Entry/Decree of Divorce at 32-33.)[2]

{¶ 26} The trial court expressly excluded appellee's annual LTIP bonus from appellee's gross income for purposes of calculating her spousal support obligation. The trial court found that appellee's future LTIP bonuses were appellee's separate property, not income. The trial court provided the following rationale for this determination:

> The Court finds the LTIs are property, in accordance with the majority of Ohio cases. *See Anderson v. Anderson,* 12th Dist. Warren App. No. CA 2019-10-118, 2020-Ohio-4415 (RSUs were divided between the parties as property division because they were granted for his performance and service during the marriage); *Chapman v. Chapman*, 6th Dist. Lucas App. No. L-10-1293, 2012-Ohio-126 (using a time rule, similar to a coverture fraction); *Cwik v. Cwik*, 1st Dist. Hamilton App. No. C-090843, 2011-Ohio-463 (finding it was appropriate to exclude the RSUs as income in a child support calculation when the court had already divided the RSUs as property); *Heine v. Heine*, Hamilton C.P. No., DR-2002-0342, 2003-Ohio-7365, ¶28 (stock granted for past and present services

---

[2] The trial court referred to appellee's cash bonus as "MIP," and her stock bonus as "LTI."

> are deemed marital property subject to division). Further, in
> New York, RSUs are treated as property division, and a
> coverture fraction is applied. *S.H. v. E.S.*, 52 Misc.3d 1219(A),
> N.Y.S. (Westchester Co., N.Y.) citing *DeJesus v. DeJesus*, 90
> N.Y.2d 643, 665 N.Y.S.2d 36, 687 N.E.2d 1319 (1997).

(Jgmt. Entry/Decree of Divorce at 19-20.)

{¶ 27} At the outset of our discussion, we note that appellant does not challenge the trial court's determination that any LTIP bonus shares that vested prior to the end of the marriage are marital property. Nor does appellant challenge the trial court's determination that he is to receive, in the property division, a coverture fraction of any LTIP shares that were awarded prior to the end of the marriage but vested thereafter. The trial court's conclusion that PSUs and RSUs awarded to appellee after December 31, 2018, are not marital property is supported by Smith's expert testimony and the relevant Cardinal Health records. Smith opined that appellee's bonus LTIP's are awarded prospectively rather than retrospectively.

{¶ 28} Nevertheless, we find that the trial court abused its discretion by failing to consider appellee's post-marital LTIP bonuses as income to appellee for purposes of calculating appellee's spousal support obligation. In our view, appellee's post-marital LTIP shares are simply a bonus, which should be considered in the calculation of her spousal support obligations. [3]

{¶ 29} In *Ghanayem v. Ghanayem*, 12th Dist. No. CA2018-12-138, 2020-Ohio-423, the trial court included Husband's cash bonus and LTIP bonus as part of his gross income for purposes of both child and spousal support. On appeal, Husband argued the trial court erred by including his LTIP bonus in the calculation of his spousal and child support obligations. More particularly, Husband argued that his LTIP account is a "retirement" account that should be excluded from the calculation of child and spousal support. Husband also raised an alternative argument that, if the LTIP benefits are income for purposes of determining support, then the trial court erred by failing to order a more specific methodology or calculation so that Wife could assume her share of the tax consequences.

---

[3]There is no dispute that appellee's LTIP bonus shares are treated as income by the Internal Revenue Service as the shares vest.

{¶ 30} The court of appeals rejected appellant's argument and affirmed the trial court. The decision reads in relevant part as follows:

> Contrary to Husband's argument otherwise, the LTIP bonus is simply a bonus, which can appropriately be considered in the calculation of his support obligations. *See Ornelas*, 2012-Ohio-4106 at ¶ 46, 978 N.E. 2d 946 (percentage of bonus allowable in spousal support calculation); former R.C. 3119.01(C)(7) (bonus included in "gross income" in child support calculation). As a result, we decline to adopt Husband's characterization of the LTIP account as a "retirement" account that should be excluded from the support orders."

*Id* at ¶ 22.[4]

{¶ 31} We agree with the *Ghanayem* court that compensation in the form of LTIP shares is simply a bonus that must be included in a payee spouse's gross income for purposes of calculating spousal support. We further find that many of the cases cited by the trial court and appellee stand for the proposition that LTIP's granted to the payee spouse during the marriage are marital property, whether the shares are vested or unvested, but that shares granted after the marriage of not marital property. *See Chapman v. Chapman*, 6th Dist. No. L-10-1293, 2012-Ohio-126 and *Anderson v. Anderson*, 12th Dist. No. CA2019-10-118, 2020-Ohio-4415. Those cases do not address the question whether post-marital LTIP bonuses should be considered income for purposes of spousal support.

{¶ 32} Appellee argues that her income in the form of LTIP's must be excluded from the calculation of her gross income for purposes of spousal support because much of appellee's future LTIP income will be derived from shares previously included as part of the division of marital property. Appellee claims that appellants position results in double-dipping. We disagree.

{¶ 33} In *Gaffney v. Gaffney*, 12th Dist. No. CA2019-10-172, 2020-Ohio-5051, ¶ 16, the trial court treated Husband's bonus stock options that had been exercised prior to the end of the marriage as marital property and divided the shares equally. The trial court treated the post-marital stock options as income to Husband and included the value of the future stock options as part of his gross income for purposes of calculating his spousal

---

[4]Appeal not accepted in *Ghanayem v. Ghanayem*, 159 Ohio St. 3d 1417, 2020-Ohio-3365.

support obligation.   In so doing, the trial court adopted a tiered support model, as recommended by husband, where his Tier 1 support was related to his base salary and his Tier 2 support obligation was for future gross bonuses, commissions, or incentives he would receive from his employer during the spousal support term.

{¶ 34} On appeal, Husband argued that trial court's spousal support order constituted double-dipping.  The court of appeals disagreed.  Relying on their prior decision in *Ghanayem,* the *Gaffney* court noted that the trial court ordered Husband to pay a sum equal to 35 percent of "any *future* gross bonus or commission or incentive pay Husband receives from his employer *and during the spousal support term*."  (Emphasis sic.)  *Id* at ¶ 6.  The *Gaffney* court concluded that no double-dipping occurred because the trial court did not treat the same bonus, commission, or incentive pay as both marital property and income.  *Id.*

{¶ 35} In this case, as was the case in *Gaffney*, appellant advocated a tiered approach to spousal support that captured all of appellee's income, including her base salary, cash bonus, and LTIP bonuses.  Contrary to appellee's claim, treating her future LTIP bonus as income for purposes of spousal support will not result in double-dipping as that term is used in the case law.  *See Gallo v. Gallo*, 10th. Dist. No. 14AP-179, 2015-Ohio-982, ¶ 18, (Explaining that double-dipping occurs when income producing assets are divided between the parties as marital property and the income subsequently derived from that property by payee is counted as income for support purposes.).  R.C. 3105.18(C)(1)(a) provides that "[i]n determining whether spousal support is appropriate and reasonable * * * the court shall consider * * * [t]he income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code."  By adjusting appellee's gross income, on remand, to account for income appellee will receive from stock units included in the division of marital property, the trial court will avoid double-dipping in this case.

{¶ 36} The trial court and appellee rely on *Cwik* at ¶ 90, in support of their contention that the trial court did not abuse its discretion by excluding all of appellee's LTIP bonus from her gross income for purposes of spousal support.  The issue in *Cwik* was child support.  In *Cwik,* the court of appeals held that the trial court did not err in failing to include a wife's "stock awards" as earnings on the child support worksheet for purposes of

R.C. 3119.01, as they had been divided equally as property, such that they would have been earnings for both parties. In making this ruling the court of appeals noted that the stock awards were not exercisable for several years, and, with respect to the restricted stock units awarded to wife after the marriage, the First District found as follows:

> [Wife's] nonmarital 2008 RSUs were not exercisable in 2009, and [Husband] has not cited any authority to support a conclusion that the unascertainable value of these units should have been included as income several years before [Wife] could have actually realized any income. Thus, we conclude that the trial court did not miscalculate [Husband's] child-support obligation based on the exclusion of the RSUs.

*Id.* at ¶ 93.

{¶ 37} The First District decided *Cwik* in 2011. In our view, the subsequent decisions of the Twelfth District in *Ghanayem* and *Gaffney* provide persuasive authority in support of appellant's claim that LTIP bonus compensation is simply a bonus that should be included in appellee's gross income for purposes of calculating spousal support. We agree with *Ghanayem* and *Gaffney* and we find that appellee's compensation in the form of LTIP shares is simply bonus compensation that must be included in her gross income for purposes of calculating spousal support. The fact that the value of the bonus shares may be difficult to ascertain is not relevant to the determination whether the shares should be treated as income or property.

{¶ 38} We also considered the case of *Jennings v. Jennings*, 10th Dist. No. 16AP-711, 2017-Ohio-8974, to define income for the purposes of spousal support. In *Jennings*, appellant sought to have the trial court exclude veteran's benefits that were non-taxable from income for spousal support calculation. Federal law did prohibit the state court from attaching the benefits, but it did not prevent the trial court from including those benefits in the income stream of Jennings. This court held that "[t]he trial court did not err when it considered appellant's VA disability benefits as a source of income in determining a spousal support award." *Id.* at ¶ 20. *Jennings* is instructive in determining that any LTIP bonus received by appellee as income after the marriage shall be included in the income stream of appellee for the purposes of calculating spousal support. The trial court failed to include LTIP bonus as part of appellee's income while testimony supports that appellee receives the bonus as part of her W-2 income.

{¶ 39} In determining whether to award spousal support, a trial court must consider the factors enumerated in R.C. 3105.18(C). Here, the trial court included appellee's yearly cash bonus as part of her income for purposes of determining reasonable spousal support. The trial court, however, expressly excluded appellee's yearly LTIP bonus from her gross income in making the spousal support calculation. We agree with the reasoning employed by the Twelfth District cases, and we find, under the particular circumstances of this case, appellee's LTIP bonus should have been treated as income for purposes of spousal support. Given the fact that appellee's yearly LTIP bonus was valued by appellant's expert at $1,500,000 in the year 2000, we find it unfair and inequitable for the trial court to completely exclude this form of compensation from appellee's gross income for purposes of spousal support. By permitting appellee to retain all of her future LTIP bonuses as her separate property, the trial court provided a windfall to appellee. Accordingly, we hold that the trial court abused its discretion when it failed to consider any portion of appellee's future LTIP bonus compensation in making the determination of reasonable spousal support.

{¶ 40} Appellee argues alternatively, even if the trial court erred by failing to include appellee's future LTIP in calculating spousal support, the amount of spousal support awarded by the trial court is more than sufficient to permit appellant to enjoy the standard of living established during the marriage. Appellee argues, therefore, there was no abuse of discretion.

{¶ 41} Even if we were to agree with appellee that the amount of spousal support awarded to appellant was sufficient to permit appellant to enjoy the standard of living of the parties established during the marriage, the factor set forth in R.C. 3105.18(C)(1)(g), is just one of the factors the trial court must consider in determining reasonable spousal support. As we noted in *Gallo*, a trial court "may not base its decision regarding spousal support on any one factor in isolation." *Id.* at 49, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93 (1988), *superseded by statute on other grounds*. Moreover, appellee's argument presumes that the trial court would have made the same spousal support award had the trial court considered all or part of appellee's future LTIP bonus as income. Given the potential worth of appellee's post-marital LTIP bonuses, we cannot make such an assumption.

{¶ 42} To the extent that appellee argues the trial court's spousal support award is justified by appellant's voluntary under employment, we agree with appellant that the trial court did not make a specific finding that appellant was underemployed. Appellant and appellee's relocation from Denver to D.C. was for appellant's employment. He had a rigorous work schedule with Homeland Security, but there is no indication that he was not earning above or at the same capacity as appellee while in this position. Both parties quit their jobs in D.C. attempting to salvage their marriage. The parties move to Ohio was precipitated by appellee's affair.

{¶ 43} One of the factors that the trial court is required to consider is the "lost income production capacity of either party that resulted from that party's marital responsibilities." R.C. 3105.18(C)(1)(m). Appellant has taken a position that allowed him to provide for the care of the children while appellee has the more arduous work schedule at Cardinal Health. Appellee asked that the trial court not consider that appellant lost income when he increased his role in the children's care and lost income in the move to Ohio.

{¶ 44} We also noted in *Gallo* that "[n]one of the factors set forth in R.C. 3105.18(C)(1) require a trial court to impute income to an unemployed or underemployed spouse." *Id.* at 50, citing *Walpole v. Walpole*, 8th Dist. No. 99231, 2013-Ohio-3529, ¶ 60; *Valentine v. Valentine*, 9th Dist. No. 11CA0088-M, 2012-Ohio-4202, ¶ 4; *Petrusch v. Petrusch*, 2d Dist. No. 15960, 1997 Ohio App. LEXIS 823 (Mar. 7, 1997). There is no testimony that appellee requested an expert conduct a vocational evaluation to investigate appellant's earning potential. Based on the evidence, we cannot conclude that the trial court found appellant underemployed in earning $125,000 per year. Therefore, we cannot speculate as to the award of reasonable spousal support the trial court would have made had it properly considered appellee's LTIP bonus as income and given appropriate weight to all factors in R.C. 3105.18 for purposes of spousal support.

{¶ 45} As previously noted, the trial court valued appellee's 2020 LTIP bonus at $1,500,000. Appellee also maintains that because her future LTIP bonus is not guaranteed, it would be unfair to treat future LTIP's as income for purposes of spousal support. During her direct examination, Smith explained the differences between LTIP shares appellee receives as PSUs and those she receives as RSUs as follows:

A. So * * * the difference between [Plaintiff's Exhibit] 1B, which is the RSUs, and [Plaintiff's Exhibit] 1C, which is the PSUs, is the two major differences. The first one is the RSUs vest each year, one-third, one third, one-third. The second difference about RSUs is that they are a known amount, so meaning when an RSU grant happened, the RSUs are granted for a certain dollar amount. So if it's $100,000 of RSUs, the share price is $50 a share, then you get 2,000 RSUs. It's always going to be 2,000 RSUs. It's not going to change. Then in those 2,000 RSUs, one-third would vest one year from the rant date, one-third vests two years from the grant date, and one-third vests three years from the grant date. So I would call it, like, a gradual vesting of equal vesting ach year.

The difference, when you flip over to talk about the PSUs, is that they are an uncertain number. So I sort of think of it, the PSUs, as being a potential number of units. And the way it happens is that the PSUs are also assigned a dollar value and then converted into a number of shares -- or units. Excuse me.

So if you took my example before and you were granted $100,000 worth of PSUs, that would be potentially 2,000 shares. But what happens with the PSUs is two things, then, different from the RSUs.

Number one is that they are performance stock units, so they are based on Cardinal's performance year over year. Number two, it's a three-year cliff vesting, meaning you vest zero percent in one year, you vest zero percent in year two, you do not vest until the very last day of year three, and then you vest 100 percent.

But if you remember, you had 2,000 PSUs, it doesn't necessarily mean you are getting 2,000 PSUs. So the other big difference is that the PSUs can get funded anywhere from zero to 240 percent. That's a decision that is made by Cardinal's compensation committee, is they look at that and the performance of Cardinal's earnings per share, I think it is, and they decide what percentage of those PSUs are going to get funded.

So for an example is that the PSUs, the most recent PSUs, that funded -- actually funded at 19 percent of what the target was. So there's -- not only is it a longer cliff-vesting period, but there is a question mark about what that percentage of funding is going to be. So these aren't a set amount.

(Tr. Vol. 2 at 412-14.)

{¶ 46} Russell did not disagree with Smith's testimony regarding the relative characteristics of the RSUs and PSUs. Russell, however, calculated spousal support based on the assumption that the value of Cardinal stock would remain constant, appellee would continue to receive RSUs and PSUs at the present rate, and that appellee's PSUs would be funded at 100 percent.

{¶ 47} We recognize that the calculation of spousal support will be more complicated as a result of our determination that the trial court abused its discretion by failing to treat appellee's LTIP bonus as income. On remand, the trial court will be required to determine the likelihood that appellee will continue to receive RSUs and PSUs, the estimated value of appellee's future LTIP's, and to what extent the future PSUs will be funded. The trial court will also be asked to "true up" the spousal support award to account for income taxes due and owing by appellee on her future LTIP's, as the expert testimony established that appellee is required to pay income taxes on her LTIP bonus.[5]

{¶ 48} Appellee also maintains that treating appellee's future LTIP bonuses as income for purposes of spousal support is manifestly unfair to her in light of the fact that her future LTIP shares are subject to a "black-out period," meaning appellee is precluded from immediately selling those shares. Appellee testified that the black-out periods are imposed because appellee is privy to material, nonpublic Cardinal Healthcare information. The trial court was persuaded by appellee's argument and found *Ghanayem* distinguishable because there was no indication in that case whether any of Husband's LTIP shares were subject to a black-out period. Our review of the expert testimony in this case reveals that both Russell and Smith agreed that the black-out period is primarily a liquidity issue, which is relevant to the division of property, but not particularly relevant to the determination of gross income. (Tr. Vol. 2 at 482-83.) Appellant also expressed a willingness at trial to accept shares of Cardinal Stock in payment of spousal support and to retain those shares until appellee cleared her black-out restrictions. On remand, the trial

[5] Smith testified on cross-examination as follows:
Q. You told the Court that it would be complex to figure out what is either property or income that was part of the court order, yet, you created all of these charts and everything -- I know you are very talented so it's really not that difficult to compute, is it?
A. It's not -- I think you can compute it. I just wanted the Court to understand that if you are going to order it, there has to be some pretty sophisticated tracking that has to happen. You have to divide it out as property you have to figure out the tax, and then you have to decide what percentage is going to be income and apply a percentage to it after tax. I just want the Court to have information to make the decision. (Tr. at 97.)

court may choose to fashion an order in this regard, as it did with the non-qualified stock options. (Jgmt Entry/Decree of Divorce at 22-23.) Such an order would resolve any disparity in share liquidity and market risk.

{¶ 49} R.C. 3105.18(C)(1) requires the trial court "[i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support" to consider "[t]he income of the parties, *from all sources*." (Emphasis added.) In order for the trial court to calculate fair and reasonable spousal support on remand, the trial court must determine the weight and credibility of the expert testimony and resolve the conflicting opinions regarding the probability that appellee will continue to receive income from her LTIP bonuses and the projected amount of income appellee will receive from those shares during the period in which spousal support is payable. The trial court did not make any of the necessary determinations because the trial court erroneously ruled that all of appellee's post-marital LTIP bonus shares were her separate property, not income.[6]

{¶ 50} Appellant also challenges the relatively short duration of the spousal support award in light of the length of time the parties were married. Because we are remanding this matter to the trial court to re-determine the amount of spousal support that would be fair and reasonable, and because the additional income to appellee will likely increase her gross income, any opinion from this court regarding the duration of the spousal support award would be premature.

{¶ 51} For the foregoing reasons, we sustain appellant's second assignment of error. Accordingly, we shall remand this matter for the trial court to properly consider appellee's future LTIP's as income for purposes of determining reasonable spousal support.

## B. Appellant's First Assignment of Error

---

[6]The trial court retained jurisdiction "to modify each type of spousal support, but only as to amount." (Jgmt. Entry/Decree of Divorce at 42.) Pursuant to R.C. 3105.18(F) the trial court may modify spousal support where there has been a "change in the circumstances of a party [which] includes, but is not limited to, any increase or involuntary decrease in the party's * * * *bonuses*," provided "[t]he change in circumstances is substantial and makes the existing award no longer reasonable and appropriate," and "[t]he change in circumstances was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was for[e]seeable." (Emphasis added.)

{¶ 52} In appellant's first assignment of error, appellant argues that the trial court abused its discretion when it failed to include all of appellee's income when calculating child support.  We agree.

{¶ 53} R.C. 3119.03 provides:

> In any action or proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order * * * the amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due.

{¶ 54} Where the basic schedule and worksheet apply, the guideline amount is rebuttably presumed to be the correct amount of child support to be awarded.  R.C. 3119.03. Consequently, "[d]espite the discretion a trial court has in child support matters, the court must literally and technically follow the statutory requirements in all material respects." *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 88, citing *Marker v. Grimm*, 65 Ohio St.3d 139 (1992), paragraph two of the syllabus.

{¶ 55} For purposes of child support, "Gross income," is defined as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, * * * bonuses * * * and all other sources of income."  R.C. 3119.01(C)(12).  This court has noted that "[s]uch an expansive definition is necessary to ensure that the best interest of children, the intended beneficiaries of child support awards, are protected."  *Misra v. Mishra*, 10th Dist. No. 17AP-306, 2018-Ohio-5139, ¶ 32.

{¶ 56} In determining the amount of appellee's gross income for purposes of child support, the trial court made the following pronouncement: "The parties agreed that, Jessica's bonus and stock units should not be included." (Jgmt. Entry/Decree of Divorce at 43.)  Appellant claims that there was no such agreement and the trial court erred by relying on a non-existent agreement in determining child support.  We agree.

{¶ 57} Our review of the record reveals no specific oral or written stipulation or agreement between the parties to exclude appellee's cash bonus and LTIP bonus from the calculation of appellee's child support obligation.  Appellant concedes that there was no

such agreement in this case. Appellee nevertheless argues that appellant either waived his right to claim error on appeal or invited the trial court error of which he now complains. Appellee points to several parts of the record which could arguably be construed as a concession by appellant's trial counsel that appellee's yearly bonus and LTIP's were not a consideration in calculating child support. For example, appellee points to the child support worksheet completed by appellant which does not include appellee's cash bonus or LTIP bonus as part of appellee's gross income.

{¶ 58} "[A] waiver 'is defined as " 'a voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts.' " ' " *State v. Horton*, 10th Dist. No. 17AP-266, 2017-Ohio-8549, ¶ 17, quoting *Miller v. Lindsay-Green, Inc.,* 10th Dist. No. 04AP-848, 2005-Ohio-6366, ¶ 70, quoting *RFC Capital Corp. v. EarthLink, Inc.,* 10th Dist. No. 03AP-735, 2004-Ohio-7046, at ¶ 58, quoting *Newsom v. Newsom*, 10th Dist. No. 01AP-686, 2002-Ohio-1317, ¶ 6. "The doctrine of invited error holds that a litigant may not 'take advantage of an error which he himself invited or induced. Invited error requires that counsel induced the error or was actively responsible for it.' " *Deutsche Bank Natl. Trust Co. v. Lane*, 10th Dist. No. 07AP-1015, 2008-Ohio-5369, at ¶ 18; *Agarwal v. Bansal*, 10th Dist. No. 00AP-732 (Mar. 30, 2001), quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20 (1986). "Invited error requires that counsel induced the error or was actively responsible for it." *Id.*, citing *State v. Kollar,* 93 Ohio St. 89 (1915).

{¶ 59} Our review of the entire record reveals that there was no waiver in this case, and no invited error.

{¶ 60} In appellant's trial brief, filed August 28, 2020, appellant clearly sets forth his argument that appellee's gross income is derived from a base salary, cash bonus and LTIP bonus, and that the trial court should include all three components of appellee's income in calculating both child support and spousal support. In appellant's brief, he notes: "Because of the three-part income structure of the Plaintiff, it will be necessary for the court to capture all income when it orders child and spousal support. This is important because each year roughly 65 percent of Plaintiffs multi-million-dollar annual income comes from stock grants." (Aug. 28, 2020 Defs.' Trial Brief on Income and Support at 7.) In a footnote, appellant proposed the following: "Should this court for whatever reason opt to exclude

Plaintiff's stock income from the 'all income' analysis, Defendant would then request this court to revert to the traditional method of valuing child and spousal support on the combination of base pay and bonus income." *Id.* at 8, Fn. 2.

{¶ 61} Additionally, in appellant's "closing argument," appellant's trial counsel argued as follows:

> Plaintiff's total compensation is set forth in the SEC proxy statement filed, which defines her salary at $575,000, a bonus component (which exceeded 100% of her salary in 2020), and some amount of RSUs and PSUs, totaling just under $3,000,000. *Defendant has always maintained that the court should determine the amount of child and spousal support based on each of these three components.* Child and spousal support should be ordered on a monthly basis from the Plaintiff's base income and that of Defendant. There should be additional child and spousal support based on the amount Plaintiff receives for a bonus each year.
>
> The bonus portion of support should be 35% for spousal support and 10% for child support. The final portion of the child and spousal support should be those RSUs and PSUs that vest each year, again 35% for spousal support and 10% for child support. The fairness in this three-tier award is that Defendant is in the same position as Plaintiff where he would only receive the fixed percentage based on what the Plaintiff actually receives (after taxes*). The testimony established that Plaintiff has always received a bonus and always received grants.*

(Emphasis added.)  (Sept. 30, 2020 Def. Closing argument at 2.)

{¶ 62} It is clear to this court that the primary argument advanced by appellant in the trial court was that appellee's cash bonus and LTIP bonus should be included in her gross income for purposes of calculating child support.  Our review of Russell's expert testimony shows that his opinion regarding appellee's child support obligation is based upon all three components of appellee's compensation from Cardinal Health; base salary; cash bonus; and LTIP bonus.  Thus, the record does not support waiver or invited error.

{¶ 63} Appellee argues alternatively, even if there was no agreement, waiver, or invited error regarding the exclusion of appellee's cash bonus and LTIP bonus from the calculation of appellee's child support obligation, the trial court properly exercised its

discretion when it elected to deviate from the amount resulting from the worksheet.  We disagree.

{¶ 64}  R.C. 3119.22 permits a deviation from the amount resulting from the worksheet as follows:

> The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and therefore not be in the best interest of the child.
>
> If it deviates, *the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, its determination that the amount would be unjust or inappropriate and therefore not in the best interest of the child, and findings of fact supporting that determination.*

(Emphasis added.)

{¶ 65} As previously noted, the trial court erred when it failed to include all of appellee's income in making the calculation of child support pursuant to the basic child support schedule and the applicable worksheet.  The trial court also gave no indication in its judgment entry that it was deviating from the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet.  Nor did the trial court make any expressed determination that the amount would be unjust or inappropriate and therefore not in the best interest of the child.  The trial court made no findings of fact supporting that determination, other than the erroneous finding that the parties agreed to exclude appellee's yearly bonus and stock awards from the calculation.  Given the amount of appellee's cash bonus and LTIP bonus, we cannot assume the trial court would have awarded the same amount of child support even if the trial court had included appellee's cash bonus and LTIP bonus in the calculation.

{¶ 66}  Appellee next contends that the child support award is justifiable in this case because the trial court imputed additional income to appellant because he was voluntarily underemployed.   Even if we were to conclude that the trial court found appellant

underemployed in the amount of $125,000 per year, we cannot speculate as to the award of reasonable spousal support the trial court would have made had it properly considered appellee's cash bonus and LTIP bonus as income for purposes of spousal support. Moreover, the only reason given by the trial court for excluding appellee's bonuses was the alleged agreement of the parties, not appellant's underemployment.

{¶ 67} "The starting point for determining the proper amount of child support to be paid is parental income, defined as gross income for those employed to full capacity or gross income plus potential income for those not employed to full capacity." *Misra* at ¶ 42, citing *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, ¶ 11. "This court has held that a trial court's judgment as to the amount of child support is unreasonable, and an abuse of discretion, when it lacks a rational basis or there is no sound reasoning process to support it." *Misra* at ¶ 42, citing *Poling v. Poling*, 10th Dist. No. 13AP-189, 2013-Ohio-5141, ¶ 22, citing *Vaughn v. Vaughn*, 12th Dist. No. CA2007-02-021, 2007-Ohio-6569, ¶ 12. Here, the trial court's reliance on a non-existent agreement between the parties resulted in a child support determination that lacked a rational basis or a sound reasoning process to support it. Furthermore, because the trial court erroneously relied on the alleged agreement, the trial court failed to "literally and technically follow the statutory requirements in all material respects." *Wolf-Sabatino*, ¶ 88, citing *Marker*, at paragraph two of the syllabus.

{¶ 68} The evidence established that appellee has always received a cash bonus and always received and LTIP bonus. The trial court determined that appellee's cash bonus should be included in her gross income for purposes of the spousal support calculation. We have determined that the trial court abused its discretion by completely excluding appellee's LTIP bonus from her gross income for purposes of calculating spousal support.

{¶ 69} In determining gross income for purposes of child support, R.C. 3119.05(D) requires the court to include the lesser of either (1) "[t]he yearly average of all * * * bonuses received during the three years immediately prior to the time when the person's child support is being computed" or (2) "[t]he total * * * bonuses received during the year immediately prior to the time when the person's child support obligation is being computed." Gross income for purposes of child support, "does not include 'nonrecurring or unsustainable cash flow items' which are defined as income that a parent receives in any year, not to exceed three years that the parent does not expect to receive on a regular basis."

*Ghanayem v. Ghanayem*, 12th Dist. No. CA2018-12-138, 2020-Ohio-423, ¶ 19. *See also* R.C. 3105.18(C)(12)(e) and (C)(8). On remand, the trial court will be required to consider appellee's cash bonus and LTIP bonus as part of her gross income for child support purposes in accordance with R.C. 3105.18(C).

{¶ 70} Based on the foregoing, we hold that the trial court abused its discretion when it completely excluded appellee's yearly cash bonus and LTIP bonus from appellee's gross income in calculating appellee's child support obligation. Appellant's first assignment of error is sustained.

### C. Appellant's Third Assignment of Error

{¶ 71} In appellant's third assignment of error, appellant claims that the trial court abused its discretion by awarding appellee 40 percent of the income appellant might earn from any book that appellant "is writing or plans to write" about the divorce. More particularly, appellant contends that property that does not yet exist cannot be considered marital property subject to division in a divorce proceeding. We agree.

{¶ 72} R.C. 3105.171(A)(3), defines marital property as follows:

> (a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
>
> (i) *All real and personal property that currently is owned by either or both of the spouses*, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage.

(Emphasis added.)

{¶ 73} The evidence at trial showed that appellant authored several published works during the marriage in the field of public policy. There is no evidence that appellant had completed a book about the parties' marriage. During cross-examination, appellant testified as follows:

> Q. Well, let's talk about your book. You mentioned several times that -- to Jessica and in your -- most recently in this case in your trial brief that you're writing a book, correct?
>
> A. *I plan to write a book, yes.*
>
> Q. You wouldn't want to say anything in that book to denigrate Jessica that would hurt your children, right?
>
> A. I'm going to try to write the book in a way that is accurate to what occurred so that allows me to then talk about the

> policy reforms that I believe would be beneficial to families going forward.

(Emphasis added.)  (Sept. 11, 2020 Tr. 2 Vol. at 911-12.)

{¶ 74} Based on appellant's undisputed testimony, there is no book about the marriage currently in existence, and there is no evidence of any promise or agreement with a third-party respecting the publication of any such book in the future.  Appellee claims that appellant has previously informed her that he has begun writing the book, but the email correspondence she points to provides: "You make the book *I will write* better every passing month so thank you."  (Emphasis added.)  (Aug. 12, 2020 Mot. of Pl. Protective Order, Ex. C, at 13.)  Appellee also testified that appellant "talked about, you know, putting his -- letting all of the venom out in the book, *he would write* about this."  (Emphasis added.)  (Aug. 31, 2020 Tr. Vol. 1 at 143.)

{¶ 75} A book about the marriage that appellant may write in the future is mere expectancy and speculative; it is not marital property subject to division under R.C. 3105.171(A).  Moreover, under the heading "Spousal Support," the trial court made the following order:

> If [appellant] receives any advance payment or payment from any source whatsoever, for the publication of any type of [appellant's] work, including books, magazines, online magazines or articles appearing on  social  media sites, he shall, in immediately notify [appellee] within 15 days of receipt of the payment or advance payment, in which he will disclose the amount of the payment.

(Jgmt. Entry/Decree of Divorce at 42.)

{¶ 76} Thus, the trial court recognized that future proceeds from any book that appellant "is writing or plans to write" about the divorce should be treated as income to appellant for purposes of spousal support, and not as marital property.  Accordingly, we hold that the trial court erred by awarding appellee 40 percent of the income appellant might earn from any book that appellant "is writing or plans to write" about the divorce.

{¶ 77} For the foregoing reasons, appellant's third assignment of error is sustained.

**V.  CONCLUSION**

{¶ **78**} Having sustained appellant's three assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand the matter for further proceedings consistent with this decision.

*Judgment reversed and remanded.*

KLATT and MENTEL, JJ., concur.

_____