[Cite as *Asbanyoli v. Haddadin*, 2024-Ohio-170.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Fadi S. Asbanyoli, | : | |
| Plaintiff-Appellant, | : | No. 23AP-163 (C.P.C. No. 19DR-0707) |
| v. | : | (REGULAR CALENDAR) |
| Jennifer Haddadin, | : | |
| Defendant-Appellee. | : | |

———

D E C I S I O N

Rendered on January 18, 2024

———

**On brief:** *Harry Lewis Co., LPA*, and *Gregg R. Lewis* for appellant.

**On brief:** *Law Office of Jefferson Liston, LLC*, and *Jefferson E. Liston* for appellee.

———

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

MENTEL, P.J.

{¶ 1} Plaintiff-appellant, Fadi S. Asbanyoli, appeals from a February 16, 2023 judgment entry and decree of divorce. For the reasons that follow, we affirm.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On February 28, 2019, appellant filed a complaint against defendant-appellee, Jennifer Haddadin, for divorce citing incompatibility and alleged gross neglect of duty. On April 19, 2019, appellee, filed her answer and counterclaim against appellant for divorce alleging incompatibility and gross neglect of duty. Both parties requested, among other things, to be named residential and legal custodian of the minor children. Appellant and appellee filed motions for temporary orders without oral hearing on February 28, 2019 and April 19, 2019, respectively. In the motions, appellant and appellee each sought to be

named the temporary residential and legal custodian of the minor children. On June 3, 2019, the trial court appointed a guardian ad litem ("GAL") to represent the children's interests. On July 12, 2019, the GAL submitted his first report and recommended that both parties have temporary residential and legal custody of the minor children. On July 29, 2019, the magistrate in the case issued temporary orders that both parties be designated the legal and residential custodians of the minor children, and both parents be named as school placement parents as long as they resided in Upper Arlington School District. The magistrate also determined appellant to be the child support obligor and ordered child support payments at that time. On February 18, 2020, a mediation outcome notice was filed with the court, which indicated that the parties had failed to reach an agreement in this matter.

{¶ 3} On March 29, 2021, the GAL submitted his second interim report and recommendation to the court. The GAL recommended that both parties continue as the temporary residential and legal custodians of the minor children and that appellant's parenting time be modified. On May 12, 2021, the magistrate issued an amended temporary order, which in relevant part, modified the parenting time pursuant to the GAL's recommendation. On October 10, 2022, the GAL submitted his final report and recommendation. The GAL recommended the parties have shared parenting and whichever parent resided in the Upper Arlington School District be designated the school placement parent. The report also provided additional recommendations as to enrollment in extracurricular activities, counseling for the parents, methods of communication between the parents, and a proposed shared parenting plan.

{¶ 4} After a series of continuances, the matter was set for trial on October 17, 2022 and continued through October 26, 2022. Relevant to the instant appeal, the following evidence was adduced at trial.

{¶ 5} The parties were married on August 19, 2012 in Chicago, Illinois. There is no dispute that the parties were bona fide residents of the state of Ohio for six months and resided in Franklin County, Ohio for 90 days prior to the filing of appellant's complaint for divorce. During the marriage, the parents had three children: S.A. (d.o.b. 4/21/2014); A.A.

(d.o.b. 7/6/2017); and E.A. (d.o.b. 7/6/2017). The parties have lived apart without cohabitation since March 5, 2019.

{¶ 6} Appellant has completed high school and earns an annual income of $32,760 from the care of his mother through Hilliard Home Care LLC. Appellee holds a bachelor's and master's degree in public health. During the course of the marriage, appellee became a stay-at-home mother. Appellee is now employed at Tzagournis Family and Cosmetic Dentistry and has an annual income of $26,520. There is no dispute that the parties hold no marital debts or assets that need to be divided.

{¶ 7} On February 16, 2023, the trial court issued its judgment entry and decree of divorce in this matter. The parties were determined incompatible and entitled to a divorce from one another. The parties were to keep their full interest in any pension, IRA 401(K), or financial accounts in his or her individual name. The parties have divided their household goods and personal property, and do not own any real estate. Relevant to the instant appeal, the trial court designated appellee as the sole legal custodian and residential parent of the minor children. The trial court further held that appellant was to pay $490.37 as a monthly child support obligation. In reaching this determination, the trial court, after consideration of the applicable deviation factors, declined to reduce appellant's child support payment.

{¶ 8} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 9} Appellant assigns the following as trial court error:

> [I.] THE COURT ABUSED ITS DISCRETION WHEN IT DESIGNATED DEFENDANT - APPELLEE THE SOLE LEGAL CUSTODIAN AND RESIDENTIAL PARENT OF THE PARTIES MINOR CHILDREN.
>
> [II.] THE COURT ABUSED ITS DISCRETION IN FAILING TO CONSIDER A DEVIATION TO THE CHILD SUPPORT ORDER WHEN IT ORDERED PLAINTIFF - APPELLANT TO PAY CHILD SUPPORT IN THE AMOUT (sic.) OF $490.37.

(Sic passim.)

## III. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 10} We begin by reviewing the trial court's determination of appellee as the sole legal custodian and residential parent of the minor children.

{¶ 11} This court reviews the trial court's finding of legal custody and residential parent for an abuse of discretion. *Myers v. Wade*, 10th Dist. No. 16AP-667, 2017-Ohio-8833, ¶ 15, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A trial court's judgment is deemed an abuse of discretion when it is unreasonable, arbitrary, or unconscionable. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, ¶ 12. When reviewing an assignment of error for an abuse of discretion, an appellate court may not merely substitute its judgment for that of the trial court. *Mayer v. Mayer*, 10th Dist. No. 21AP-3, 2022-Ohio-533, ¶ 16, citing *Havens v. Havens*, 10th Dist. No. 11AP-708, 2012-Ohio-2867, ¶ 6, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128 (1989). An appellate court should not independently reweigh the evidence. *Mayer* at ¶ 16, citing *Lopez-Ruiz v. Botta*, 10th Dist. No. 11AP-577, 2012-Ohio-718, ¶ 13, citing *Miller* at 71. However, even under an abuse of discretion standard, no court is permitted to commit an error of law. (Further citation omitted.) *Badescu v. Badescu*, 10th Dist. No. 18AP-947, 2020-Ohio-4312, ¶ 9. Accordingly, a court abuses its discretion when its decision is based on an error of law. *Id.*

{¶ 12} Appellant does not dispute that the trial court reviewed the statutory factors concerning custody and parental rights. (Appellant's Brief at 16; Reply Brief at 6.) Appellant contends that throughout the pendency of this case, the parties have both been designated as the legal custodian and residential parent of the minor children. Appellant argues that the trial court erred, therefore, when it deviated from the prior temporary orders. (Appellant's Brief at 15.)

{¶ 13} R.C. 3109.04 authorizes the trial court to allocate the parental rights and responsibilities for the care of a minor child. R.C. 3109.04(F)(1) directs:

> (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and

responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member

of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 14} In its February 16, 2023 decree, the trial court wrote that it reviewed the entire file, all pleadings, and testimony presented at trial. Trial court also observed the testimony of the witnesses, determined the witnesses' credibility, and weighed the evidence during the course of trial. The trial court emphasized that the overriding concern regarding the allocation of parental rights and responsibilities is the best interest of the children. The trial court noted that the minor children did not participate in an in-camera interview.

{¶ 15} The trial court provided extensive discussion of the relevant statutory factors. As to the wishes of the parents regarding the children's care, the trial court wrote that the parties failed to reach an agreement on parental rights and responsibilities.[1]  *See* R.C. 3109.04(F)(1)(a). While appellant proposed that the parties have shared parenting, appellee wanted to be named the sole residential parent and legal custodian of the minor children. Both parents expressed concerns about the other's ability to effectively coparent. (Feb. 16, 2023 Divorce Decree at 13.) The trial court also noted that while both parties have a good relationship and bond with the children, they each expressed concerns over the other's parenting of the minor children. *See* R.C. 3109.04(F)(1)(c). The trial court found that while the children have adjusted to school, they either had an Individualized Education Program ("IEP") or their IEP status was pending at the time of trial. *See* R.C. 3109.04(F)(1)(d). All the children have varying types of mental and physical health concerns. Of note, all the children have been diagnosed, or there is need for additional

---

[1] The trial court found that R.C. 3109.04(F)(1)(b), (h), and (j) were not applicable to the case. (Feb. 16, 2023 Divorce Decree at 13, 16.)

testing, with autism spectrum disorder. *See* R.C. 3109.04(F)(1)(e). While there have been no willful denials of parenting time, there have been concerns as to the tardiness of exchanges. *See* R.C. 3109.04(F)(1)(f) and (i). Appellant is current on all child support payments. *See* R.C. 3109.04(F)(1)(g).

{¶ 16} In addition to the above statutory factors, R.C. 3109.04(F)(2)[2] provides that when determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the following:

> (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
>
> (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
>
> (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
>
> (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
>
> (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶ 17} Concerning R.C. 3109.04(F)(2)(a), i.e., the ability of the parents to cooperate and make decisions jointly, the trial court found that the parties expressed concerns about their ability to cooperate and work together. The GAL also shared this concern. "[T]estimony was provided that showed both parties have failed to provide sufficient information to the other about situations and/or have not done so in a timely manner." (Divorce Decree at 17.) The trial court wrote that appellee alleged appellant had threated her during a parenting time exchange, which appellant denied. Both parties testified that appellee had called the police on several occasions but none of those calls resulted in charges, arrests, or civil protection orders. *See* R.C. 3109.04(F)(2)(c). However, both parties testified that they wanted the other parent to have a good relationship with the

---

[2] *See also* R.C. 3109.04(F)(3) ("When allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition.").

minor children and, therefore, could encourage the sharing of love, affection, and contact between the children and the other parent. *See* R.C. 3109.04(F)(2)(b).[3]  The GAL recommended that the parties share parenting and for whichever parent resides in Upper Arlington School District to be designated the school placement parent. *See* R.C. 3109.04(F)(2)(e).

{¶ 18} Finally, R.C. 3109.051(D) enumerates additional factors when determining parenting time:

> (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
>
> (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
>
> (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
>
> (4) The age of the child;
>
> (5) The child's adjustment to home, school, and community;
>
> (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;
>
> (7) The health and safety of the child;

---

[3] The trial court also noted that the parties live approximately 10 miles apart, or a 19-minute drive, so geographic proximity is not an issue in this case. R.C. 3109.04(F)(2)(d); R.C. 3109.051(D)(2).

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶ 19} Here, the trial court cited its prior findings that while both parties have a good relationship and bond with the children, they expressed concerns over the other's parenting of the minor children.[4] *See* R.C. 3109.051(D)(1). The trial court also found that the parents work traditional schedules, which permits them to each work around their parenting time periods. *See* R.C. 3109.051(D)(3). The trial court restated the age of the children and referenced its prior findings as to the learning and educational needs of the children discussed in R.C. 3109.04(F)(1)(d). *See* R.C. 3109.051(D)(4) through (5). The trial court also referenced its prior discussion as to the mental and physical health of the children, and that the parents both expressed concerns about the safety of the children in the other's care. The GAL, however, testified that he had no concerns about the children's physical health or safety. *See* R.C. 3109.051(D)(7) and (9). The trial court, in its discussion of R.C. 3109.051(D)(10), wrote that the parents have been capable of agreeing on makeup parenting time, but it reiterated the parties have "displayed [an] inability to effectively communicate that could impact each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights." (Divorce Decree at 21.) As for the remaining relevant factors, the trial court referenced its prior findings concerning R.C. 3109.04(F)(1)(h) through (j). *See* R.C. 3109.051(D)(11) through (14).

{¶ 20} Upon review, we cannot find that the trial court's determination as to child custody and residential parent was an abuse of discretion. While it is true that the GAL recommended that the parties have shared parenting over the minor children, this is one of many statutory factors to consider in making a custody determination. The trial court's conclusion that it would be in the best interest of the children to grant appellee sole legal custody and residential parent was driven, at least in part, by the parents' inability to reach

---

[4] The trial court found R.C. 3109.051(D)(6), (8), (15), and (16) were not applicable factors.

a parenting agreement as well as concerns regarding their ability to cooperate and make decisions. "The parties have engaged in a highly litigious battle for the children and their disputes are endless. This Court notes concern that this will be a battle for the remainder of these children's lives both in and out of court." (Divorce Decree at 12.) Given the justifiable concerns over the ability of the parties to coparent, the trial court's designation of appellee as the sole legal custodian and residential parent of the minor children was reasonable.

{¶ 21} Appellant's first assignment of error is overruled.

### B. Appellant's Second Assignment of Error

{¶ 22} In appellant's second assignment of error, he contends that the trial court erred when it imposed a monthly child support obligation of $490.37. Appellant does not dispute that the trial court's underlying calculation of child support complied with the Ohio Child Support Guidelines. Appellant argues that a deviation was appropriate as the parents have near equal parenting time, and he "barely makes more money than [a]ppellee and his earning capacity is significantly lower than [a]ppellees." (Appellant's Brief at 21.)

{¶ 23} The General Assembly addressed matters concerning child support orders in R.C. 3119. " 'The underlying purpose of Ohio's child support legislation * * * is to meet the current needs of the minor child.' " *Habib v. Shikur*, 10th Dist. No. 17AP-735, 2018-Ohio-2955, ¶ 13, quoting *Harbour v. Ridgeway*, 10th Dist. No. 04AP-350, 2005-Ohio-2643, ¶ 34. R.C. 3119.03 provides "the amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due." However, pursuant to R.C. 3119.22, a court may deviate from the child support schedule and applicable worksheet if, after consideration of the factors set forth in R.C. 3119.23, the court finds that the calculated amount "would be unjust or inappropriate and therefore not be in the best interest of the child." R.C. 3119.22; *see also Caleshu v. Caleshu*, 10th Dist. No. 19AP-742, 2020-Ohio-4075, ¶ 21. We review a trial court's determination of a child support order for an abuse of discretion. *Habtemariam v. Worku*, 10th Dist. No. 19AP-47, 2020-Ohio-3044, ¶ 19, citing *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 12AP-1042, 2014-Ohio-1252, ¶ 6.

{¶ 24} Here, the trial court considered each of the factors provided in R.C. 3119.23 and found that a deviation was not warranted. (Divorce Decree at 23-25, 32-33.) As to appellant's claims, the trial court acknowledged that appellee has a significant advancement in her completed education and earning capabilities compared to appellant, but it ultimately found that a deviation from the child support guidelines was not appropriate. (Divorce Decree at 24, 32.) Upon review, we cannot find that the trial court's child support determination was an abuse of discretion. While it is true appellee has an advanced degree, appellee testified that she was out of the workforce for some time caring for the children. A court is not required to deviate from the child support guidelines " 'merely because a deviation would be permissible, or even desirable.' " *Weaver v. Weaver*, 10th Dist. No. 16AP-743, 2017-Ohio-4087, ¶ 13, quoting *Warzala v. Warzala*, 11th Dist. No. 2006-T-0018, 2007-Ohio-2855, ¶ 26. When considering whether a deviation is warranted, there is no " 'bright-line test.' " *Weaver* at ¶ 11, quoting *Morosko v. Willis*, 9th Dist. No. 21333, 2003-Ohio-3360, ¶ 18. Thus, a parent is not automatically entitled to a downward deviation even in cases when extraordinary circumstances or factors under R.C. 3119.23 are present. *Weaver* at ¶ 13, citing *Bonvillian v. Clark*, 3d Dist. No. 10-13-20, 2014-Ohio-2003, ¶ 17. While appellant disagrees with the trial court's determination, he has failed to demonstrate that the trial court abused its discretion by declining to deviate from the amount of child support provided in the guidelines.

{¶ 25} Based on the foregoing, appellant's second assignment of error is overruled.

**IV. CONCLUSION**

{¶ 26} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

JAMISON and EDELSTEIN, JJ., concur.

————————————