[Cite as *Calel v. Calel*, 2024-Ohio-410.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ANA AJANEL CALEL, | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| ALEJANDRO TUM CALEL, | : | Case No. 2023CA00051 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Juvenile Division,
Case No. 2023 JCV 00125

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     February 2, 2024

APPEARANCES:

For Plaintiff-Appellant

KWASI O. BEDIAKO
RETANIO AJ RUCKER
MWW Immigration Center
3150 Chester Avenue
Cleveland, Ohio 44114

For Defendant-Appellee

Address Unknown
Guatemala

*Baldwin, J.*

{¶1} The appellant, Ana Anjanel Calel, appeals the April 17, 2023, Judgment Entry denying Special Immigrant Juvenile Status ("SIJS") to her minor child, R.L.T.C. The appellee is Alejandro Tum Calel.

### STATEMENT OF THE FACTS AND THE CASE

{¶2} R.L.T.C. was born on December 30, 2014. The appellant is R.L.T.C.'s biological mother. The appellee is R.L.T.C.'s biological father. The appellant and R.L.T.C. have resided in Stark County, Ohio, for more than one year, and the appellant has been R.L.T.C.'s sole caretaker since entering the United States in 2015. Appellee has not seen R.L.T.C. since he was eight months old and has not financially supported R.L.T.C. for over a year.

{¶3} On February 23, 2023, the appellant filed a complaint for legal custody of R.L.T.C. and asked the trial court to make findings of fact to allow R.L.T.C. to petition the federal government for status as a Special Immigrant Juvenile under 8 U.S.C. 1101(a)(27)(J).

{¶4} On March 29, 2023, the trial court granted custody of R.L.T.C. to the appellant.

{¶5} On April 17, 2023, the trial court denied the appellant's Complaint for Special Findings, finding they had not placed the child in the custody of an individual appointed by the State and they had not shown it was against the child's best interests to return to his country of origin.

{¶6} The appellant filed a timely notice of appeal and herein raises the following Assignments of Error:

{¶7} "I. WHETHER THE LOWER COURT, IMPROPERLY RELYING UPON GONZALEZ V. RODRIGUEZ, 2018-OHIO-2410, 2018 OHIO APP. LEXIS 3607, 115 N.E.3D 719 (10TH APP. DIST., FRANKLIN COUNTY, JUNE 21, 2018), ABUSED ITS DISCRETION BY REFUSING TO MAKE THE APPROPRIATE SPECIAL IMMIGRANT JUVENILE STATUS FINDINGS AFTER COMMITTING THE MINOR CHILD TO THE CUSTODY OF AN INDIVIDUAL APPOINTED BY THE STATE OF OHIO IN VIOLATION OF §101(a)(27)(J) OF THE IMMIGRATION AND NATIONALITY ACT."

{¶8} "II. WHETHER THE LOWER COURT ABUSED ITS DISCRETION BY FAILING TO MAKE THE SPECIAL IMMIGRANT JUVENILE STATUS FINDINGS REQUIRED UNDER THE ACT IN THE ABSENCE OF TESTIMONY AS TO ABUSE, DANGERS IN THE MINOR'S COUNTRY OF ORIGIN, LACK OF SCHOOLING, OR THREATS."

## STANDARD OF REVIEW

{¶9}   A SIJS determination, pursuant to 8 U.S.C. 1101(a)(27(J), "provides certain alien minors with a special immigration classification that may lead to permanent residency." *Young Zheng v. Pogash*, 416 F.Supp.2d 550, 552 (S.D.Tex.2006). In order to qualify, "the juvenile must submit a petition to the United States Citizen and Immigration Services ("USCIS") with a declaration from a juvenile court demonstrating that the juvenile meets the statutory definition." *Gonzalez v. Rodriguez*, 10th Dist. Franklin No.17AP-136, 2018-Ohio-2410, 115 N.E.3d 718, ¶8.

{¶10}   "To apply for [SIJS] with the USICS, the petitioner must first obtain the following special findings from a juvenile court: (1) the child is dependent on a juvenile court, or under the custody of…an individual… appointed by the court or State; (2)

reunification with one or both parents is not viable due to abuse, neglect, or abandonment; and (3) returning the child to his or her country of origin would not be in the child's best interest." *Matter of J.A.S.*, 5th Dist. Tuscarawas No. 2021 AP 12 033, 2022-Ohio-2508, 192 N.E.3d 1313, ¶15. These determinations must be made in accordance with State law. 8 C.F.R. 204.11.

{¶11} The juvenile court's declaration must satisfy each requirement of 8 U.S.C. 1101(a)(27)(J) to "constitute a prima facie evidence of the juvenile's eligibility for SIJ classification." *Gonzalez v. Rodriguez*, 10th Dist. Franklin No.17AP-136, 2018-Ohio-2410, 115 N.E.3d 718, ¶9.

## I.

{¶12} In the appellant's first Assignment of Error, the appellant argues the trial court erred in finding the child was not placed into the custody of an individual appointed by the State. We disagree.

{¶13} As noted above, the first prong of 8 U.S.C. 1101(a)(27)(J) requires the juvenile court to find the juvenile dependent or the juvenile court has legally committed the juvenile to, or placed in the custody of, an agency or department of a State, or an individual or entity appointed by the juvenile court. 8 C.F.R. 204.11.

{¶14} In *Gonzalez*, the Tenth District Court of Appeals found that allocating custody to the juvenile's natural mother was not the same as being placed under the custody of an individual appointed by a state or juvenile court. *Gonzalez* at ¶12.

{¶15} We agree with the Tenth District's finding in *Gonzalez*. The trial court did not appoint the appellant as the juvenile's custodian. Under Ohio law, a parent's right to the custody of their children is "a constitutionally protected due process right [.]" *In re*

*Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, ¶11; citing Troxel v. Granville, (2000), 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49. As such, a parent's right to custody of their child arises from the operation of law, it does not originate with a court appointment. See *Dunn v. Marcum*, 2nd Dist. Clark No. 08-CA-112, 2009-Ohio-3015 (An unmarried mother is the child's legal custodian by operation of law); *Fadi S. Asbanyoli, Plaintiff-Appellant, v. Jennifer Haddadin, Defendant-Appellee.*, 10th Dist. Franklin No. 23AP-163, 2024-Ohio-170, ¶13. (R.C. §3109.04 provides the court authority to allocate parental rights and responsibilities between the parents). The trial court merely designates a parent as the child's legal custodian when a determination is appropriate, as in the case *sub judice*. See R.C. §3109.04, R.C. §3109.042. Therefore, the trial court did not abuse its discretion in finding the appellant was not appointed by the juvenile court.

{¶16} Accordingly, the appellant's first Assignment of Error is overruled.

**II.**

{¶17} In the appellant's second Assignment of Error, the appellant argues the trial court abused its discretion in failing to find that returning to his country of origin is not in R.L.T.C.'s best interest. We disagree.

{¶18} The trial court is not required to specifically list or cite to each factor set forth in determining the child's best interest, including those listed in R.C. §3109.04, or any other relevant factor. *Rickman v. Rickman*, 5th Dist. Holmes No. 15CA014, 2016-Ohio-132. A trial court needs only sufficient findings of fact and conclusions of law to substantially comply with these statutes. *Bruwier v. Bruwier*, 5th Dist. Stark No. 2016CA00072, 2016-Ohio-7568.

**{¶19}** The appellant argues that because the trial court referred in its journal entry that no testimony as to lack of schooling, abuse, threats, or dangers in the country of origin, it abused its discretion in failing to find that it is not in R.L.T.C.'s best interest to return. The appellant then made a general argument that sending the child back without his mother would not be in the child's best interest.

**{¶20}** Upon a review of the record, the trial court listed factors it found relevant in the determination not to make a factual finding that it is against R.L.T.C.'s best interest to be sent back to his country of nationality or last habitual residence. The factors the juvenile court found significant are relevant, and the trial court's decision was not arbitrary, unreasonable, or unconscionable.

**{¶21}** Accordingly, the appellant's Second Assignment of Error is overruled.

### CONCLUSION

**{¶22}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Juvenile Division, is hereby, affirmed.

By: Baldwin, J.

Delaney, P.J. concur,

King, J. concurs separately.

*King, J. concurs separately,*

{¶ 23} I concur fully in the court's judgment and opinion. I write separately to address an issue inherent in petitioner's claim; I have serious doubt that a state court can be forced to comply with 8 U.S.C. 1101(a)(27)(J) (Section 287(g) of the Immigration and Nationality Act). Recently, the Supreme Court addressed the limitations of federal legislation requiring state courts to make certain determinations under the Tenth Amendment's anticommandeering principle, which are relevant here.

{¶ 24} In *Haaland v. Brackeen*, 599 U.S. 255, 273, 143 S.Ct. 1609, 216 L.Ed.2d 254 (2023), the Court first addressed a claim that the Indian Child Welfare Act ("ICWA") exceeded Congress's power under Article I. *Id.* at 273. The Supreme Court observed that the power to legislate with regard to Indian tribes was plenary. *Id.* Yet it also observed that plenary did not mean it was power without limit. *Id.* at 276. The matter before us arises out of Congress's authority over immigration and naturalization, which the Court has described as both broad and undoubted. *Arizona v. United States*, 567 U.S. 387, 394, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012). As illustrated by *Haaland*, that is the beginning—not the end—of the analysis.

{¶ 25} The Court recognized while the federal government's powers under Article I rarely touch on family law, it is not an area foreclosed to it under the Constitution. *Haaland* at 277. Ultimately, the Court concluded Congress had the power to pass the ICWA. Here we can assume without deciding that this aspect of the Immigration and Nationality Act is within Congress's power to enact. *But see United States v. Jones*, 109 U.S. 513, 520, 3 S.Ct. 346, 27 L.Ed. 1015 (1883) (stating state courts can adjudicate federal immigration matters but only so long as the state first consented to it doing so.)

{¶ 26} The Court then turned to the anti-commandeering arguments before it; the relevant aspect of its analysis had to do with its review of *Printz v. United States,* 521 U.S. 898, 906, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), and the constitution's interplay with state judicial power. *Haaland.* at 288. As the Court observed, there is early precedent supporting that the state courts have the power to adjudicate federal issues, especially when considering that Congress was left with the option of foregoing entirely the creation of inferior federal courts. *Id.* at 290-291. As a consequence, the Court held that "Congress may impose ancillary recordkeeping requirements related to state-court proceedings without violating the Tenth Amendment." *Id.* at 291. This is not the case in *Haaland* of mere judicial recordkeeping.

{¶ 27} Although *Haaland* set a bright-line rule allowing state courts to be conscripted into federal recordkeeping, the scope of a state court's adjudicative responsibilities under federal legislation was not addressed. In *Printz,* the Court observed a previous unanswered question of whether States could be required, without its consent, to enforce federal immigration laws. *Printz* at 906, citing *Holmgren v. United States,* 217 U.S. 509, 516–517, 30 S.Ct. 588, 54 L.Ed. 861 (1910). The Court went on to hold: "These early laws establish, **at most**, that the Constitution was originally understood to permit imposition of an obligation on state *judges* to enforce federal prescriptions, insofar as those prescriptions related to matters appropriate for the judicial power." (Emphasis added.) *Id.* at 907.

{¶ 28} Thus, the limitations, if any, that the Tenth Amendment place on federal commandeering of state judicial systems, particularly for immigration matters, has not been established. Nonetheless, if the situation here where analogous to the scheme of

42 U.S.C. 1983 where Congress provided state courts with the same scope of authority as the federal courts, then the situation before us might not require comment. In that case, there would a clear federal statute providing both federal and state court with the power to hear certain controversies and resolve them entirely within the scope of its respective judicial power.

{¶ 29} But here Congress appears to have established a mixed structure where state courts exercise its judicial power in aid of federal administrative proceedings. Thus, I question whether the federal scheme is commandeering state judicial officers in the aid of officers of the federal executive branch. *Printz* makes clear that state executive officers could not be commandeered this way; so, it would appear discordant for the Tenth Amendment to allow judicial officers to be used as adjuncts for federal executive branch officials. The question is all the more pertinent given that the question of consent raised in *Holmgren* has apparently remained unanswered for over a hundred years.